IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
JACKSON DIVISION

| | |
|---|---|
| **CAROLYN JOHNSON**, as survivor and next of kin of **EARL WAYNE JOHNSON**, deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>**CORECIVIC, INC., DAMON T. HININGER, MARK A. EMKES, DONNA M. ALVARADO, ROBERT J. DENNIS, STACIA HILTON, HARLEY G. LAPPIN, ANNE MARIUCCI, THURGOOD MARSHALL, JR., CHARLES L. OVERBY, JOHN R. PRANN, JR., GRADY PERRY, and JOHN DOE 1 through JOHN DOE 20,**<br><br>        Defendants | Case No. 1:18-cv-1051 |

## ORIGINAL COMPLAINT

NOW COMES Carolyn Johnson, the Plaintiff herein, stating and alleging as follows:

### Introduction

1. The Plaintiff's husband, Earl Wayne Johnson, died on November 2, 2017 after he was severely beaten (and then denied adequate medical care) while incarcerated in Hardeman County Correctional Center ("HCCC") a private prison operated by CoreCivic, Inc. in Whiteville, Tennessee. Prior to Mr. Johnson's death, CoreCivic had paid millions in settlements and damages around the United States because (1) it routinely understaffed its correctional facilities, inevitably resulting in anarchy, assault and murder; and (2) it routinely failed to provide adequate medical care to inmates.

2. In 2016, the company and its directors were sued by company shareholders because, among other things, the company misrepresented its pattern of understaffing and poor medical care, which ultimately led the federal Burea of Prisons to cancel its business relationship with Core Civic. Notwithstanding these and numerous other warnings, CoreCivic continued to provide inadequate staffing, training, supervision and medical care at HCCC, resulting in Mr. Johnson's death. According to an audit released by Tennessee Comptroller Justin P. Wilson on November 3, 2017 – the day after Mr. Johnson's death – another CoreCivic facility in Whiteville needed 79 officers to cover 17 positions during a shift, but on average the facility provided only 57 officers per shift. According to the same report, investigators found such inconsistencies and irregularities in the staffing data for HCCC that they were unable to accurately determine staffing levels.

3. CoreCivic and its corporate leaders have bolstered the company's profits by reducing staff levels and cutting medical care, despite overwhelming evidence that these practices lead to the maiming and murder of inmates, and despite the fact that CoreCivic is contractually obligated to provide minimum staff levels and adequate medical care.  In other words, CoreCivic and its leaders knowingly and intentionally tolerate murder and mayhem for the sake of higher profits. Apparently they have concluded that nobody cares about dead prisoners, and that it is more profitable to pay an occasional fine or settlement than to prevent a murder or treat a dying inmate. Furthermore, the company has repeatedly engaged in fraud and evidence tampering in order to conceal its systemic understaffing, contract violations, and employee misconduct.

## Jurisdiction and Venue

4. This Court has jurisdiction under 28 U.S.C. § 1331 because the Plaintiff asserts federal claims under 42 U.S.C. § 1983.

5.  Venue is proper in this Court because some of the Defendants reside or are located in the Western District of Tennessee, and the acts giving rise to this lawsuit occurred in the Western District of Tennessee.

**Parties**

6.  Plaintiff Carolyn Johnson was the wife of Earl Wayne Johnson, an inmate who was murdered at the Hardeman County Correctional Center ("HCCC"), a private prison in Whiteville, Tennessee. She asserts claims as his survivor and his next of kin.

7.  Defendant CoreCivic, Inc., formerly known as Corrections Corporation of America, is a Maryland corporation that is headquartered in Tennessee. It operated HCCC at all times relevant to this case.

8.  Defendant Damon T. Hininger is the Chief Executive Officer of CoreCivic, Inc.

9.  Mark A. Emkes is the chairman of the board of directors of CoreCivic, Inc. He has been a member of the board since 2014.

10. Donna M. Alvarado is as a member of the board of directors of CoreCivic, Inc. who has served since 2003.

11. Robert J. Dennis is as a member of the board of directors of CoreCivic, Inc. who has served since 2013.

12. Stacia Hilton is a member of the board of directors of CoreCivic, Inc. who has served since 2016.

13. Harley G. Lappin is a member of the board of directors of CoreCivic, Inc. who previously served as Executive Vice President of Operations.

14. Anne Mariucci is a member of the board of directors of CoreCivic, Inc. who has served since 2011.

15. Thurgood Marshall, Jr. is a member of the board of directors of CoreCivic, Inc. who has served since 2002.

16. Charles L. Overby is a member of the board of directors of CoreCivic, Inc. who has served since 2001.

17. John R. Prann, Jr. is a member of the board of directors of CoreCivic, Inc. who has served since 2001.

18. Defendant Grady Perry is an employee of CoreCivic, Inc., and he was the warden of HCCC at all times relevant to this case. He resides in the Jackson Division of the Western Division of Tennessee.

19. Defendants John Doe 1-5 are inmates who assaulted Mr. Johnson.

20. Defendants John Doe 6-20 are guards, supervisors, and medical personnel who worked in the HCCC but did not take reasonable steps to prevent the injuries to and the death of Mr. Johnson.

## Facts

21. On the morning of November 1, 2017, the Plaintiff received a phone call indicating that her husband, Earl Wayne Johnson, had been severely injured in HCCC and had been transported to Jackson – Madison County Medical Center in Jackson, Tennessee. The Defendants did not notify Mr. Johnson's family members until more than 12 hours after he had been discovered unconscious in his cell. The Plaintiff and her sons soon drove more than four hours to Jackson, where she found her husband unconscious and on life support. From the swelling and bruising on his body, it was clear that he had been beaten severely. He was pronounced dead the day after her arrival.

22. In the weeks following Mr. Johnson's death, CoreCivic and local officials gave the

Plaintiff no explanation of what had happened to her husband despite numerous inquiries from her and other family members.

23. On February 24, 2018, the Plaintiff received a copy of the autopsy report concerning her husband's death, and it contained significant errors. According to that report, Mr. Johnson was assaulted by an unidentified inmate on October 24, 2017 at Whiteville Correctional Facility and treated at the prison infirmary, then sent back to his cell. In reality, Mr. Johnson was not housed at Whiteville Correctional Facility but at HCCC.  The report indicates that Mr. Johnson was found unconscious in his cell by another inmate around 8:45 p.m. on October 31, 2017, and that he arrived at Jackson – Madison Medical Center at 10:17 p.m. In reality, Mr. Johnson did not arrive until midnight, more than three hours after he was found unconscious.  According to the report, he was pronounced dead at 4:46 a.m. on November 2, 2017 as a result of bleeding from a severe head injury.

24. After this lawsuit was filed, the Plaintiff learned from Mr. Johnson's cellmate that both Mr. Johnson and his cellmate were repeatedly assaulted, threatened, and extorted by prison gang members at HCCC.  Both men reported the ongoing violence and extortion to CoreCivic supervisors, and the men repeatedly requested transfer to a safer location.  As a result of CoreCivic's deliberate practice of understaffing its facilities, however, HCCC did not provide sufficient guard staff to protect Mr. Johnson or his cellmate from the violent gang members, even after it learned the men had been targeted for abuse.  Furthermore, CoreCivic personnel refused to transfer Mr. Johnson and his cellmate to a safer location. Ultimately, Mr. Johnson was fatally beaten over a bag of coffee. In the week after Mr. Johnson was fatally beaten, but before he died from his injuries, Mr. Johnson's cellmate repeatedly asked CoreCivic officials to provide medical attention to Mr. Johnson, but they ignored the requests until after Mr. Johnson had slipped into a

coma. Mr. Johnson might have survived his injuries if he had been treated in a timely fashion, but he died because of CoreCivic's corporate policy of providing inadequate medical care to inmates in order to reduce costs.

25. Mr. Johnson's death was part of a pattern. According to a 2011 lawsuit filed by the American Civil Liberties Union, for example, inmates referred to CoreCivic's Idaho Correctional Center as "Gladiator School" because the understaffing led to such a violent atmosphere at the prison. CoreCivic settled the lawsuit with the ACLU, agreeing to provide minimum staff levels, but the company was held in contempt of court in 2013 because it violated the agreement and falsified records to misrepresent the number of guards on duty. In 2014, the FBI opened an investigation of the company based on its billing for "ghost employees," Idaho Governor Butch Otter ordered state officials to take control of the prison, and the company paid the state $1 million for understaffing the prison.

26. On or about February 23, 2017, a federal jury found that CoreCivic had violated inmates' Eighth Amendments rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's long-standing practice of understaffing the Idaho Correctional Center. The jury did not award damages, however, because it found that the inmates' particular injuries were caused by other factors.

27. At an Oklahoma prison operated by CoreCivic, ten prisoners were involved in a fight on February 25, 2015 that left five with stab wounds. The following month, eight more were involved in another stabbing incident. In June of that year, thirty-three gang members fought with weapons and eleven prisoners were sent to a hospital. On September 12, 2015, four inmates were killed during a riot at the same facility. Inmates alleged that gangs were effectively allowed to run the prison. According to an investigation by the Oklahoma Department of

Corrections, video evidence of the September 12, 2015 incident from three cameras at the facility was recorded over or deleted by CoreCivic employees. Two guards were later indicted for bringing drugs and other contraband into the prison, including one of the guards accused of failing to act during the riot. Between 2012 and 2016, one-third of all homicides in Oklahoma prisons occurred at two CoreCivic facilities, though they held just over 10 percent of the state's prison population.

28.  In August of 2016, the Office of the Inspector General ("OIG") of the U.S. Department of Justice found widespread deficiencies in staffing and medical care at facilities operated for the federal Bureau of Prisons by private contractors, including those operated by CoreCivic. As a result, the Department of Justice indicated that it would phase out its relationships with private prisons. That, in turn, led to the shareholder lawsuit described above. In a separate report released on April 25, 2017, OIG found widespread understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic for the U.S. Marshals Service, with vacancy levels reaching as high as 23 percent between 2014 and 2015.  Earlier, the company tried to hide the fact that it was packing three inmates into two-inmate cells at Leavenworth, contrary to prison regulations. The following excerpt appears in the April 25, 2017 OIG report:

> In 2011, without the knowledge of the [U.S. Marshals Service], the [Leavenworth Detention Center or "LDC"] took steps to conceal its practice of triple bunking detainees. LDC staff uninstalled the third beds bolted to the floor of several cells designed for two detainees and removed the beds from the facility in advance of a 2011 American Correctional Association (ACA) accreditation audit. A subsequent CoreCivic internal investigation revealed that this may have also occurred during other ACA audits of the LDC.

The Plaintiff restates the foregoing allegations as her own.

29.  In May of 2012, a riot at a federal prison operated by CoreCivic in Natchez,

Mississippi resulted in the death of a guard and injuries to approximately 20 inmates and prison staff. OIG investigated and alleged the following in a report released in December of 2016:

> The riot, according to a Federal Bureau of Investigation (FBI) affidavit, was a consequence of what inmates perceived to be inadequate medical care, substandard food, and disrespectful staff members. A BOP after-action report found deficiencies in staffing levels, staff experience, communication between staff and inmates, and CoreCivic's intelligence systems. The report specifically cited the lack of Spanish-speaking staff and staff inexperience.
>
> Four years after the riot, we were deeply concerned to find that the facility was plagued by the same significant deficiencies in correctional and health services and Spanish-speaking staffing. In 19 of the 38 months following the riot, we found CoreCivic staffed correctional services at an even lower level than at the time of the riot in terms of actual post coverage. Yet CoreCivic's monthly reports to the BOP, which were based on simple headcounts, showed that correctional staffing levels had improved in 36 of those 38 months.

The Plaintiff adopts the foregoing allegations as her own.

30. As noted above, an audit released one day after Mr. Johnson's death found that WCF needed 79 officers to cover 17 positions during a shift, but on average the facility provided only 57 officers per shift. The same audit found systemic problems at HCCC and Trousdale Turner Correctional Center, another facility operated by CoreCivic, including understaffing and gang violence. The audit further noted that information provided by CoreCivic concerning Trousdale Turner and HCC was so incomplete that it was not possible to determine the accuracy of staffing levels. The Plaintiff alleges that CoreCivic deliberately provided incomplete information in order to disguise the fact that it was understaffing both facilities.

31. On December 12, 2017, a former guard at Trousdale Turner testified before a legislative committee that she resigned from the company in September after witnessing two inmates die from medical neglect during the seven months that she worked for the company. Ashley Dixon told lawmakers that in one instance she pleaded with her superiors for three days to help a dying inmate, but to no avail, and her subsequent complaints were ignored by company

officials.

32.  The foregoing incidents – and others like them – demonstrate that CoreCivic, its wardens, its senior officers, and its directors adopted and enforced a corporate policy of understaffing prison facilities and denying medical care to inmates, all for the purpose of increasing the company's profits, and notwithstanding the fact that such practices consistently led to riots, assaults, murder, and mayhem. The beating and death of the Plaintiff's husband was a predictable consequence of this corporate policy.

33.  The directors and senior officers of CoreCivic knew that understaffing, medical neglect, and inadequate training were rampant at the company's facilities, including HCCC, and they did not make reasonable efforts to change corporate policies, supervise offending employees, or counteract the threats to inmate safety.

## Claims

### Count 1: Civil Rights Violations

33.  All prior paragraphs are incorporated herein by reference.

34.  The Plaintiff brings claims against Defendants CoreCivic, Hininger, Emkes, Alvarado, Dennis, Hilton, Lappin, Mariucci, Marshall, Overby, Prann, Perry and John Doe 6 thorough John Doe 20 under 42 U.S.C. §1983 because they violated Mr. Johnson's Eighth Amendment right to be free from cruel and unusual punishment.

### Count 2: Wrongful death

35.  All prior paragraphs are incorporated herein by reference.

36.  The Plaintiff brings claims of wrongful death against all of the Defendants.

### Count 3: Gross Negligence

37.  All prior paragraphs are incorporated herein by reference.

38. The Plaintiff brings claims against Defendants CoreCivic, Hininger, Emkes, Alvarado, Dennis, Hilton, Lappin, Mariucci, Marshall, Overby, Prann, Perry and John Doe 6 thorough John Doe 20 for gross negligence leading to the death of Mr. Johnson.

## Count 4: Negligence

39. All prior paragraphs are incorporated herein by reference.

40. The Plaintiff brings claims against Defendants CoreCivic, Hininger, Emkes, Alvarado, Dennis, Hilton, Lappin, Mariucci, Marshall, Overby, Prann, Perry and John Doe 6 thorough John Doe 20 for negligence leading to the death of Mr. Johnson.

## Count 5: Assault

41. All prior paragraphs are incorporated herein by reference.

42. The Plaintiff brings claims against Defendants John Doe 1-5 for assaulting Mr. Johnson.

**Request for Relief**

The Plaintiff respectfully prays that upon a final hearing of this case, judgment be entered for her against the Defendants, for actual and punitive damages together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate; costs of court; attorney fees; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Carolyn Johnson**

**Certificate of Service**

I certify that a copy of this document was filed with the Court's ECF system on July 5, 2018, which should provide automatic notice to counsel for all the parties.

**/s/ Ty Clevenger**
Ty Clevenger