# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

---

| | |
|---|---|
| CAROLYN JOHNSON, as survivor and<br>next of kin of EARL WAYNE JOHNSON,<br><br>        **Plaintiff,**<br>**v.**<br><br>CORECIVIC, INC.; DAMON T. HININGER;<br>MARK A. EMKES; DONNA M. ALVARADO;<br>ROBERT J. DENNIS; STACIA HILTON;<br>HARLEY G. LAPPIN; ANNE MARIUCCI;<br>THURGOOD MARSHALL, JR.;<br>CHARLES L. OVERBY;<br>JOHN R. PRANN, JR.; GRADY PERRY; and<br>JOHN DOES 1 through 20;<br><br>        **Defendants.** | )<br>)<br>)<br>)<br>)      **No. 18-1051-STA-egb**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

Before the Court is Defendants Damon T. Hininger;[1] Grady Perry; Mark A. Emkes; Donna

Alvarado; Robert J. Dennis; Stacia Hilton; Harley G. Lappin; Anne Mariucci; Thurgood Marshall,

Jr.; Charles L. Overby; and John R. Prann, Jr.'s Motion to Dismiss the Amended Complaint (ECF

No. 13) filed on July 19, 2018.  Plaintiff Carolyn Johnson has responded in opposition, and

---

[1] The initial Complaint named Damon T. Heninger as a Defendant, and the Amended Complaint has altered the spelling of Defendant's last name to Hininger, which appears to be the correct spelling.  The Clerk is directed to change the spelling of Defendant Hininger's last name as it appears on the docket from "Heninger" to "Hininger."

Defendants have filed a reply brief. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part, DENIED in part**.

## BACKGROUND

Plaintiff Carolyn Johnson filed this suit on March 26, 2018, as the survivor and next of kin of her husband Earl Wayne Johnson. According to the Amended Complaint,[2] Plaintiff's spouse died November 2, 2017, after having been severely beaten during his incarceration at the Hardeman County Correctional Center ("HCCC" or "the jail"). (Am. Compl. ¶ 1.) The jail is a private prison operated by CoreCivic, Inc., a Maryland corporation with its corporate headquarters in the state of Tennessee. (*Id.*) An autopsy report stated that another inmate had attacked Mr. Johnson on October 24, 2017, and that Mr. Johnson received medical treatment for his injuries. (*Id.* ¶ 23.) The autopsy report went on to state that another inmate found Mr. Johnson unconscious in his cell around 8:45 p.m. on October 31, 2017. (*Id.*) Mr. Johnson was taken to Jackson-Madison County Medical Center for treatment and died there in the early morning hours of November 2, 2017, as a result of bleeding from a severe head injury. (*Id.*)

Mr. Johnson's cellmate later told the family that another inmate had attacked Mr. Johnson over a bag of coffee. (*Id.* ¶ 24.) According to the cellmate, gang-affiliated inmates had assaulted, threatened, and extorted both Mr. Johnson and his cellmate on numerous occasions. (*Id.*) Mr. Johnson and his cellmate had reported the incidents to jail officials and even asked for transfers to

---

[2] Plaintiff filed the Amended Complaint (ECF No. 11) on July 5, 2018, in response to Defendants' Rule 12(b)(6) motion to dismiss the initial Complaint. Just like the initial Complaint, the Amended Complaint is styled as "Original Complaint" and contains largely the same factual allegations. In order to distinguish the two pleadings bearing the same title, the Court refers to the second "Original Complaint" as Plaintiff's Amended Complaint. The filing of the Amended Complaint rendered Plaintiff's initial Complaint a nullity. Defendants' renewed Motion to Dismiss is addressed to the Amended Complaint.

a safer facility, requests which jail officials denied. (*Id.*) Mr. Johnson's cellmate repeatedly sought medical attention for Mr. Johnson in the days after the October 24 assault. (*Id.*) Jail officials did not respond to the requests until Mr. Johnson slipped into a coma. (*Id.*)

Plaintiff alleges that CoreCivic, its board of directors, its chief executive officer, and the warden of the jail are all liable for her husband's death. Specifically, the Amended Complaint alleges that CoreCivic had a corporate policy of understaffing its privately-operated prisons and denying inmates adequate medical care, all in violation of the inmates' constitutional rights. (*Id.* ¶ 32.) Plaintiff charges CoreCivic's directors and officers with knowledge "that understaffing, medical neglect, and inadequate training were rampant at the company's facilities, including HCCC" and that corporate leadership failed to take remedial action. (*Id.* ¶ 33.)

In support of these claims, the Amended Complaint cites a number of facts about CoreCivic's administration of prisons around the country.

• **Idaho**. In 2011, the American Civil Liberties Union filed suit against CoreCivic over its operation of the Idaho Correctional Center. The ACLU alleged that CoreCivic's personnel policies and understaffing had allowed the facility to become so violent that the jail was dubbed "Gladiator School." Although CoreCivic settled the suit, the Idaho court later held the company in contempt in 2013 for violating the terms of its settlement agreement by falsifying records to misrepresent staffing levels. The Federal Bureau of Investigation launched its own investigation in 2014 into allegations that CoreCivic overbilled the state of Idaho for "ghost employees." Idaho eventually resumed control of the prison's operations, and CoreCivic paid Idaho $1 million for understaffing. (*Id.* ¶ 25.) In February 2017, a jury in a federal inmate lawsuit returned a verdict in favor of

inmates, finding that CoreCivic had violated inmates' constitutional rights, though the jury awarded the inmates no damages. (*Id*. ¶ 26.)

• **Oklahoma**. Between 2012 and 2016, CoreCivic operated two prisons in Oklahoma, which held ten percent of the state's prison population but accounted for thirty-three percent of all prison homicides in the state. A series of violent inmate attacks occurred in 2015 at one of the CoreCivic prisons in Oklahoma. The Oklahoma Department of Corrections' investigation into the incidents found that CoreCivic employees had recorded over or deleted video footage of one of the altercations. Two guards at the prison, one of whom was accused of failing to act during an inmate riot, were subsequently indicted for bringing drugs and contraband into the prison. (*Id*. ¶ 27.)

• **Federal Bureau of Prisons**. An August 2016 report issued by the Office of the Inspector General of the U.S. Department of Justice found understaffing and deficient medical care at Bureau of Prisons facilities operated by CoreCivic. The Justice Department announced that as a result of the report's findings, it would begin phasing out its contracts with private prison companies. (*Id*. ¶ 28.)[3] In a December 2016 report, OIG found that understaffing and other operational deficiencies at a federal prison operated by CoreCivic in Natchez, Mississippi, had caused a riot in 2012, in which one guard was killed and 20 inmates and staff were injured. The 2016 follow-up investigation concluded that CoreCivic continued to operate the facility in the same deficient manner. (*Id*. ¶ 29.) A separate OIG report issued in April 2017 also found understaffing problems

---

[3] The Amended Complaint alleges that the Justice Department's report and decision to forego future business with CoreCivic prompted a 2016 shareholder suit against the corporation and its directors. (Am. Compl. ¶ 2.)

and cell overcrowding at the Leavenworth, Kansas detention facility operated by CoreCivic. (*Id.* ¶ 28.)

• **Tennessee**. The Tennessee Comptroller issued a report on November 3, 2017, the day after Mr. Johnson's death, finding that HCCC and another CoreCivic facility, the Trousdale Turner Correctional Center, were plagued with understaffing and gang violence. The Comptroller's report specifically determined that CoreCivic's information was so incomplete that the state could not determine the accuracy of prison staffing levels at the two facilities. The Amended Complaint alleges that CoreCivic deliberately provided the Comptroller with incomplete information to conceal understaffing. (*Id.* ¶ 30.) According to Plaintiff, a former guard at the Trousdale Turner facility testified before a legislative committee in December 2017 that she had resigned from her position with CoreCivic after prison officials denied two inmates needed medical care and the inmates died. (*Id.* ¶ 31.)

From each of these factual premises, Plaintiff has alleged causes of action for the violation of her husband's constitutional rights under 42 U.S.C. § 1983 (count 1), wrongful death (count 2), gross negligence (count 3), and negligence (count 4).[4] CoreCivic has filed an Answer to the Amended Complaint. However, the other named Defendants now move for the dismissal of the claims against them. The named Defendants argue that the Amended Complaint fails to state a plausible claim under section 1983. Plaintiff has no claim against any member of CoreCivic's board of directors or any claim against a named Defendant in his official capacity. The Amended Complaint alleges no facts to show that any named Defendant is liable in his individual capacity

---

[4] The Amended Complaint also alleges the Tennessee tort of assault but only against the John Doe Defendants 1 through 5, the inmates who assaulted Mr. Johnson. Am. Compl. ¶¶ 19, 41–42.

because there is no allegation any Defendant was personally involved in depriving Mr. Johnson of his constitutional rights. In the event the Court dismisses Plaintiff's section 1983 claims, Defendants ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's claims under Tennessee law. In the alternative, Defendants argue that the Amended Complaint fails to state a claim for negligence or gross negligence against any director, the CEO, or the warden of the jail.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550

U.S. at 555).  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted

as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

### I.       Plaintiff's Conceded Claims

Before considering whether the Amended Complaint states a plausible claim for relief, the

Court notes that Plaintiff has conceded her claims against the corporation's board of directors.  The

directors named in the Amended Complaint are Mark A. Emkes; Donna Alvarado; Robert J.

Dennis; Stacia Hilton; Anne Mariucci; Thurgood Marshall, Jr.; Charles L. Overby; and John R.

Prann, Jr.  The Sixth Circuit has remarked that "the plaintiff remains the master of its complaint"

and that, if the plaintiff "concedes that it is not bringing a claim," then the district court "should

take it at its word."  *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007).  In light of

Plaintiff's concession about her claims against the corporation's directors, the Court will dismiss

Plaintiff's claims against Defendants Mark A. Emkes; Donna Alvarado; Robert J. Dennis; Stacia

Hilton; Anne Mariucci; Thurgood Marshall, Jr.; Charles L. Overby; and John R. Prann, Jr.

Therefore, Defendants' Motion to Dismiss is **GRANTED** as to these Defendants.

Plaintiff has also clarified in her briefing that she is not pursuing claims against any

Defendant in his or her official capacity.  An official capacity claim "is only nominally against the

official and in fact is against the official's office," making the government entity, or in this case

CoreCivic, the real party in interest.  *Lewis v. Clarke*, 137 S.Ct. 1285, 1291 (2017) (citing *Will v.*

7

*Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). In other words, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Plaintiff seeks relief against each of the remaining CoreCivic corporate officers and the warden only in his personal or individual capacity, meaning Plaintiff would hold each Defendant individually liable for his own actions. *Lewis*, 137 S.Ct. at 1291. To the extent then that the Amended Complaint can be construed to assert any claim against the remaining named Defendants in their official capacities, the Court will also dismiss the official capacity claims. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's claims against them in their official capacities.

## II.     42 U.S.C. § 1983

The main issue presented at the pleadings stage is whether the Amended Complaint states a plausible § 1983 individual capacity claim against CoreCivic's CEO (Damon Hininger), executive vice president of operations (Harley Lappin),[5] or the warden at HCCC (Grady Perry).

---

[5] Although Lappin is a member of the board of directors, Plaintiff has preserved her claims against Lappin as a corporate officer. According to Plaintiff, Lappin was at all times relevant to this suit a director of CoreCivic as well as the company's chief corrections officer and executive vice-president. Plaintiff raises these facts about Lappin's role in corporate affairs in her response brief and states that if Defendants are unwilling to stipulate to these facts, Plaintiff will seek leave to file an amended pleading to add them.

The Court notes that the Amended Complaint already alleges that Lappin was CoreCivic's Executive Vice President of Operations. (Am. Compl. ¶ 13.) The Court understands then that while Plaintiff concedes any claim she may have against Lappin in Lappin's capacity as a corporate director, Plaintiff is pursuing claims against Lappin in Lappin's capacity as Executive Vice President of Operations. For purposes of deciding the Motion to Dismiss, the Court need not consider whether Plaintiff has also brought claims against Lappin as the corporation's chief corrections officer.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock*, 330 F.3d at 902. "Section 1983 is not the source of any substantive right," *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001), but creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). So the "threshold inquiry" under § 1983 is "to identify the specific constitutional right" at issue. *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Then the court "must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 257–258 (1978)).

The allegations of the Amended Complaint implicate the Eight Amendment, which prohibits the infliction of cruel and unusual punishment. Plaintiff alleges that the named Defendants are liable under section 1983 for a failure to provide adequate staff at the jail for the protection of inmates and a deliberate indifference to the serious medical needs of inmates, all in violation of Mr. Johnson's Eighth Amendment rights. The Amended Complaint also refers to Defendants' alleged failure to train and supervise CoreCivic jail personnel. Am. Compl. ¶ 2 ("Notwithstanding these and numerous other warnings, CoreCivic continued to provide inadequate staffing, training, supervision and medical care at HCCC, resulting in Mr. Johnson's death."); ¶ 33 ("The directors and senior officers of CoreCivic knew that understaffing, medical neglect, and

inadequate training were rampant at the company's facilities, including HCCC, and they did not

make reasonable efforts to change corporate policies, supervise offending employees, or

counteract the threats to inmate safety."). For purposes of Defendants' Motion to Dismiss, the

Court assumes without deciding that the Plaintiff has alleged the violation of Mr. Johnson's

constitutional rights and that CoreCivic and its officers and the warden were acting under color of

law. *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (holding that "[a] private corporation

that performs the traditional state function of operating a prison" like CoreCivic may be said to act

"under color of state law for purposes of § 1983") (citing *Street v. Corr. Corp. of Am.*, 102 F.3d

810, 814 (6th Cir. 1996)).

The issue presented is whether the Amended Complaint alleges the kind of personal

involvement required to hold the company's CEO, executive vice president of operations, and the

warden of the jail liable in their individual capacities. Supervisory personnel like these Defendants

may not be held liable under § 1983 merely on the basis of *respondeat superior*. *Iqbal*, 556 U.S.

at 676 ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*."); *Winkler v. Madison Cnty.*, 893 F.3d 877,

898 (6th Cir. 2018) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). A supervisor

will not be liable "simply because he or she was charged with overseeing a subordinate who

violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241

(6th Cir. 2016) (citing *Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006). "Active

unconstitutional behavior," and not the "mere failure to act," is required. *Id*.

This is not to say that the supervisor will be liable only when he has "physically put his

hands" on an inmate or when he was present and witnessed the unconstitutional act of a

subordinate. *Id*. at 242. A supervisor may be actively involved in unconstitutional conduct if the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. This means a § 1983 plaintiff can also show that the official implicitly authorized the misconduct, approved of the misconduct, or knowingly acquiesced in the misconduct of a subordinate. *Campbell v. City of Springfield, Ohio*, 700 F.3d 779, 790 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). While there is not always a bright line between acquiescence and the mere failure to act, a supervisor may be liable where he has "abandon[ed] the specific duties of his position in the face of actual knowledge of a breakdown in the proper workings of the department." *Winkler*, 893 F.3d at 898 (affirming summary judgment for a county jail administrator where the plaintiff had not shown that the jailer "allowed the jail to operate with the knowledge that existing healthcare policies were exposing inmates to a substantial risk of serious harm") (quoting *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)). In other words, the supervisor "abdicated his specific job responsibility," and the performance of the supervisor's job has a causal connection to a plaintiff's injury. *Id*. at 898–99; *see also Campbell*, 700 F.3d at 790 (holding that a sheriff's "indifference to maintaining a properly functioning K-9 unit could be reasonably expected to give rise to just the sort of injuries that occurred").

The Court holds that the Amended Complaint states plausible § 1983 individual capacity claims against Hininger, Lappin, and Perry under an abandonment or abdication theory of supervisory liability. The Amended Complaint clearly alleges "a breakdown in the proper workings" of CoreCivic facilities. *Winkler*, 893 F.3d at 898. The Amended Complaint alleges a litany of dangerous conditions, prevailing at CoreCivic prisons in Idaho, Oklahoma, Louisiana,

Mississippi, and Tennessee between 2011 and 2017. These allegations suggest a systemic problem in CoreCivic prisons, an underlying problem the Amended Complaint identifies as chronic understaffing. According to Plaintiff, understaffing at CoreCivic facilities like HCCC resulted in an inability to stem inmate violence or protect inmates like Mr. Johnson. With specific reference to HCCC, Plaintiff alleges that a state audit reported problems of gang violence and understaffing at HCCC, including "inconsistencies and irregularities in the staffing data for HCCC" that prevented Tennessee auditors from determining actual staffing levels at the jail. Am. Compl. ¶¶ 2, 30. Taken together, these facts plausibly show that CoreCivic prisons including HCCC were particularly dangerous for inmates and suggest a causal connection between the danger and inadequate staffing levels at a facility.

The Amended Complaint also alleges that Defendants Hininger, Lappin, and Perry had "actual knowledge" of this specific "breakdown in the proper workings" of CoreCivic prisons including HCCC. *Winkler*, 893 F.3d at 898. Plaintiff alleges that "senior officers," presumably to include the chief executive officer, the executive vice president of operations, and the warden at HCCC, "knew that understaffing, medical neglect, and inadequate training were rampant at the company's facilities." *Id*. ¶ 33. According to the Amended Complaint, despite their knowledge of the problems and the obvious risks to inmates posed by understaffing, CoreCivic understaffed its jails to cut costs and maximize profits. In other words, Plaintiff's case is that Defendants knowingly acquiesced not just in a single episode of misconduct by a subordinate against Mr. Johnson at HCCC in October 2017 but in an entire corporate policy of indifference that applied at all times in all CoreCivic facilities. The Amended Complaint then ties CoreCivic's corporate policies and Defendants' failure to respond to these known risks to Mr. Johnson's injuries at

12

HCCC. Plaintiff alleges that HCCC guards failed to protect Mr. Johnson from other inmates. The Court holds that viewing the Amended Complaint in the light most favorable to Plaintiff, these allegations suffice to state a plausible claim for relief against Hininger, Lappin, and Perry.

Defendants correctly argue in their reply, an official's execution of an official policy does not make the official liable in his individual capacity, only his official capacity. Defs.' Reply Br. 6–7 (ECF No. 16). The Court tends to agree that the Amended Complaint does not allege how any Defendant personally had control over staffing levels at HCCC. In fact, the Amended Complaint does not even allege what each Defendant's specific duties were. Without some allegation about how an individual Defendant had the capacity to alter what was allegedly a corporate policy, it is difficult to say that Hininger, Lappin, or Perry "personally had a job to do and that he did not do it." *Taylor*, 69 F.3d at 81. In fact, discovery may ultimately show that one or more Defendants did not have such authority.

But all of this goes to the strength of the inferences reasonably drawn from the pleadings. Plaintiff has, in effect, relied on the fact of each Defendant's position of authority (i.e. chief executive officer, executive vice president of operations, or warden, respectively) to imply that Defendants had the power and responsibility to change staffing levels or take other corrective action to ensure good order at HCCC but failed to do so. It will be up to Plaintiff to develop facts in discovery to show how each Defendant's actions or inaction resulted in a failure to protect Mr. Johnson from other inmates. At the pleadings stage, the Amended Complaint plausibly alleges that corporate leadership knew or should have known of specific risks to inmate safety and welfare at HCCC and that they staffed HCCC with insufficient personnel to protect inmates like Mr. Johnson. Plaintiff plausibly alleges, at a minimum, that Hininger, Lappin, and Perry "did more

than play a passive role in the alleged violations or show mere tacit approval of the goings on."

*Peatross*, 818 F.3d at 243. Plaintiff has alleged enough facts to show that Defendants Hininger, Lappin, and Perry abdicated or abandoned the specific functions of each Defendant's job. Therefore, the Motion to Dismiss is **DENIED** as to Plaintiff's § 1983 claims for the failure to protect.

Plaintiff's allegations concerning a deliberate indifference to Mr. Johnson's serious medical needs presents a closer call. While the Amended Complaint alleges a great deal about violence at CoreCivic prisons and ties that violence to the company's policy of understaffing, the Amended Complaint has far less to say about the unconstitutional denial of medical care or why corporate and institutional leadership should be liable for violating Mr. Johnson's constitutional right to proper medical treatment. The Amended Complaint makes the following allegations about the denial of medical care at CoreCivic prisons including HCCC and how CoreCivic policies resulted in Mr. Johnson's death: CoreCivic's adopted a policy of "routinely fail[ing] to provide adequate medical care to inmates" as a cost-saving measure (Am. Compl. ¶¶ 1, 3, 32); the Justice Department found that the denial of proper medical treatment was widespread at privately-operated BOP facilities, including CoreCivic facilities (*id*. ¶ 28); poor medical care at CoreCivic prisons was one of the grounds for a shareholder suit against the board of directors in 2016 (*id*. ¶ 2); "senior officers of CoreCivic knew that . . . medical neglect . . . [was] rampant at the company's facilities, including HCCC" (*id*. ¶ 33); CoreCivic provided poor medical care at HCCC (*id*. ¶ 2); Mr. Johnson's cellmate implored guards to get medical treatment for Mr. Johnson prior to his death in 2017 and had his pleas ignored (*id*. ¶ 24); and Mr. Johnson eventually died from his injuries.

Viewing these allegations in a light most favorable to Plaintiff, the Court holds that Plaintiff has barely "nudged [her] claim . . . across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Just as with its allegations of inadequate staffing, the Amended Complaint plausibly alleges that Hininger, Lappin, or Perry each "personally had a job to do [regarding medical care] and that he did not do it." *Taylor*, 69 F.3d at 81. The Amended Complaint contains much more factual detail to show that corporate leaders understaffed CoreCivic prisons and acquiesced in a culture of violence. The pleadings about a similar policy of medical neglect are just not as strong. Nevertheless, the allegations of the Amended Complaint and the reasonable inferences from the pleadings show that CEO Hininger, Executive Vice President Lappin, and Warden Perry knew or should have known of a breakdown of the proper operation of HCCC and acquiesced in a constitutionally deficient medical protocol at HCCC. Therefore, Defendants' Motion to Dismiss must be **DENIED** as to Plaintiff's § 1983 claim for the failure to provide Mr. Johnson with adequate medical care.

As for Plaintiff's § 1983 claim about each Defendant's failure to train subordinate personnel at HCCC, the Amended Complaint fails to state such a claim against Defendants in their individual capacities. The Amended Complaint contains only two allegations referring to the failure to train. The first relates only to CoreCivic, not to the individual corporate officers or the warden. *See* Am. Compl. ¶ 2 ("*CoreCivic* continued to provide inadequate staffing, training, supervision and medical care at HCCC, resulting in Mr. Johnson's death.") (emphasis added). The second alleges that both corporate directors and "senior officers of CoreCivic" knew about inadequate training, among other deficiencies, at HCCC and did nothing to take corrective action. *Id.* ¶ 33.

Assuming without deciding that this single statement satisfies Rule 8 notice pleading requirements, the Sixth Circuit has frequently held that failure-to-train claims are better treated as official capacity claims or claims against the municipality itself, or here the employer CoreCivic. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647–48 (6th Cir. 2012) (holding that a failure-to-train claim against a county attorney in her individual capacity "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability"); *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011) ("Without personal involvement, failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county."); *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 544 (6th Cir. 2008) ("While an individual supervisor may still be held liable in his or her individual capacity under a failure-to-train theory, the [plaintiff] must point to a specific action of each individual supervisor to defeat a qualified immunity claim."). Based on these cases, the Court holds that the Amended Complaint fails to state § 1983 failure-to-train claims against Hininger, Lappin, or Perry in an individual capacity. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to this issue.

## III.    State Law Claims

This leaves Plaintiff's claims against Hininger, Lappin, and Perry under Tennessee law for wrongful death (count 2), gross negligence (count 3), and negligence (count 4). Defendants argue that in the event the Court dismisses Plaintiff's § 1983 claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's claims under Tennessee law. In the alternative, Defendants argue that the Amended Complaint has failed to state a plausible claim for any of these torts. Because the Court is not dismissing Plaintiff's § 1983 claims in full, the Court will reach

the merits and decide whether Plaintiff has stated a claim for wrongful death, negligence, or gross negligence.

Tennessee's wrongful death statutory scheme preserves "the right of action that the decedent would have had, but for death" and passes the right to "the surviving spouse or, if there is no spouse, to the decedent's children or next of kin." *Beard v. Branson*, 528 S.W.3d 487, 498 (Tenn. 2017). Defendants seek the dismissal of two distinct tort claims that Mr. Johnson would have had, had he survived his injuries: negligence and gross negligence. Under Tennessee common law, a plaintiff alleging negligence must prove the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 286–87 (6th Cir. 2017) (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)).

It is clearly established under Tennessee law that prison officials owe a duty of care to the inmates in their custody. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008) (citing Restatement (Second) of Torts § 314A); Tenn. Code Ann. § 41–1–104(b) ("The custody, welfare, conduct and safekeeping of the inmates shall be the responsibility of the warden, who will examine into the affairs of the institution daily to assure that proper standards are maintained."). Prison officials are not, however, "insurers" of each prisoner's safety." *King v. Anderson Cnty.*, 419 S.W.3d 232, 248 (Tenn. 2013); *Jackson v. United States*, 24 F. Supp. 2d 823, 833 (W.D. Tenn. 1998) (citing *Cockrum v. State of Tenn.*, 843 S.W.2d 433, 437 (Tenn. Ct. App. 1992)). "Vigilance" on the part of prison officials is required, not "prescience," and "[t]he critical factor in distinguishing between vigilance and prescience is foreseeability, the third element in the

proximate cause analysis." *King*, 419 S.W.3d at 248. This means "to establish the proximate causation necessary to prevail in a negligence action against a penal institution for an inmate-on-inmate assault, the institution must have had prior notice of an attack." *Id.* Notice of this kind can be either actual or constructive. *Id.*

The Court holds that the Amended Complaint fails to allege that Hininger, Lappin, or Perry had actual or constructive notice of a danger to Mr. Johnson's safety posed by other inmates. Plaintiff alleges that other inmates had attacked Mr. Johnson and his cellmate on other occasions and that both Mr. Johnson and his cellmate had requested transfers and reported the attacks to CoreCivic "supervisors." Am. Compl. ¶ 24. However, nothing in the Amended Complaint implies that Hininger, Lappin, or Perry had even constructive notice, much less actual notice, of the possibility of an attack on Mr. Johnson. The Amended Complaint fails to allege any facts to show how an attack on Mr. Johnson at the hands of other inmates was foreseeable to the warden of HCCC, much less to CoreCivic's CEO or executive vice-president. Without more, Plaintiff has not plausibly alleged a claim for negligence based on the failure to protect Mr. Johnson from other inmates.

As for Plaintiff's claim that Hininger, Lappin, and Perry's negligence resulted in the denial of proper medical care, the Amended Complaint likewise fails to state such a claim. The Amended Complaint alleges that Mr. Johnson's cellmate repeatedly requested medical attention for Mr. Johnson after the October 2017 attack. *Id.* But the Amended Complaint is devoid of any allegations to show how Hininger, Lappin, or Perry personally breached any duty owed to Mr. Johnson. The Court concludes then that the Amended Complaint fails to state a claim against Hininger, Lappin, or Perry for their own negligence.

In response to the Motion to Dismiss, Plaintiff argues that each of these Defendants can be held vicariously liable for the negligence of their subordinate employees, presumably the John Doe prison guards and medical staff named in the Amended Complaint. But nothing in the Amended Complaint put Defendants on notice that Plaintiff would hold them vicariously liable for the acts of prison guards at HCCC. Even if the Amended Complaint had included such an allegation, none of these Defendants was an "employer" for purposes of vicarious liability under a theory of *respondeat superior*. "Tennessee law does not permit claims of vicarious liability against a manager for the acts of his employees." *Petties v. Kindred Healthcare, Inc.*, 366 F. Supp. 2d 636, 640 (W.D. Tenn. 2005); *Bass v. Barksdale*, 671 S.W.2d 476, 488 (Tenn. Ct. App. 1984). Therefore, Plaintiff has alleged no facts to show how Hininger, Lappin, or Perry could be vicariously liable for the negligence of other CoreCivic employees working at HCCC.

In the absence of plausible allegations of negligence on the part of Hininger, Lappin, or Perry, Plaintiff has also failed to allege a claim for gross negligence against these Defendants. "To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted with utter unconcern for the safety of others, or with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Maxwell v. Motorcycle Safety Foundation, Inc.*, 404 S.W.3d 469, 476–77 (Tenn. Ct. App. 2013) (quoting *Leatherwood v. Wadley,* 121 S.W.3d 682, 693–94 (Tenn. Ct. App. 2003). It follows from the Amended Complaint's failure to state a claim for negligence that the Amended Complaint also fails to state a claim for gross negligence. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's state law claims against them.

## CONCLUSION

19

The Court holds that the Amended Complaint states a plausible claim for relief under 42 U.S.C. § 1983 against Defendants Damon Hininger, Harley Lappin, and Grady Perry. The Amended Complaint fails to state a claim against CoreCivic's board of directors and against any other Defendant in his official capacity. The Court accepts supplemental jurisdiction over Plaintiff's claims under Tennessee common law but holds that the Amended Complaint fails to state a claim for negligence or gross negligence against Hininger, Lappin, or Perry. Therefore, the Motion to Dismiss the Amended Complaint is **GRANTED in part, DENIED in part**.

      **IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 5, 2018