```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              EASTERN DIVISION
```

| | |
|---|---|
| CAROLYN JOHNSON, as survivor and next of kin of EARL WAYNE JOHNSON, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 18-cv-1051-STA-tmp |
| CORECIVIC, INC., et al., ) ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

Before the court by order of reference is Carolyn Johnson's Motion to Compel Answers to Interrogatories and Production of Documents. (ECF Nos. 37 & 40.) For the reasons outlined below, the Motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Carolyn Johnson brings this lawsuit on behalf of her late husband, Earl Wayne Johnson, who was killed by another inmate while incarcerated at Hardeman County Correctional Facility ("HCCF"). (Am. Compl., ECF No. 11.) HCCF is operated by CoreCivic, Inc., a company that operates private prisons across the country. (Id.) Johnson alleges CoreCivic and three top executives at the company, Damon T. Hininger, Harley Lappin, and Grady Perry, engaged in a nationwide policy of understaffing prisons and failing to provide adequate medical care in order to boost profits. (Id.) Carolyn

Johnson alleges that this understaffing policy affected HCCF and led to Earl Wayne Johnson's death. (Id.) CoreCivic and the individual defendants deny these allegations. (Answer, ECF No. 14.)

On October 23, 2018 and October 25, 2018, Johnson served 17 requests for production and 9 interrogatories on CoreCivic. (ECF No. 37.) CoreCivic objected to all but one of the requests for production and all of the interrogatories. (ECF No. 38.) On July 5, 2019, Johnson filed the instant Motion to Compel. (ECF No. 37.) After the Motion was filed, the parties resolved their disputes regarding 5 interrogatories and 12 requests for production. (ECF No. 46.) The discovery requests still in dispute are the following:

- "REQUEST NO. 5: The Plaintiff requests all documents and communications reflecting arbitration awards, verdicts, judgments and/or settlements related to inmates who died since January 1, 2007 while they were in the custody of CoreCivic. The phrase 'custody of CoreCivic' includes, but is not limited to, inmates who suffered injury or illness in a CoreCivic facility but later died at a hospital or while being transported to a hospital."
- "REQUEST NO. 6: For the period January 1, 2007 to the present, the Plaintiff requests all documents and communications reflecting arbitration awards, verdicts, judgments and/or

settlements related to injuries or illnesses of inmates in facilities operated or controlled by CoreCivic that did not result in death."

- "REQUEST NO. 8: The Plaintiff requests all reports, documents, and communications (whether generated by CoreCivic or a government entity) that referenced or identified staffing shortages, improper inmate segregation, or misrepresentation of staffing levels since January 1, 2007 at any other facility operated or controlled by CoreCivic." Johnson has agreed to limit this request to "all reports."

- "REQUEST NO. 14: For every employee at Hardeman County Correctional Facility who resigned, retired or was terminated since January 1, 2014, the Plaintiff requests all documents and/or communications that explain why the employee is no longer employed by CoreCivic. If, for example, an email explains that a particular employee was offered the opportunity to resign in lieu of termination, then that email should be produced." Johnson has agreed to limit this request to the period since January 1, 2016.

- "REQUEST NO. 17: The Plaintiff requests all reports, documents, audits, and communications generated between January 1, 2007 and the present that reference cost savings that CoreCivic derived from understaffing guards at

facilities that it owned or operated. This request includes, but is not limited to, reports, documents, and audits produced externally (e.g., by government entities or by outside auditors) or internally by CoreCivic personnel. The phrase 'understaffing guards' refers to any occasion during which the number of guards at a CoreCivic facility was below the amount required by government regulation or contract. The phrase 'cost savings' refers to the difference between (1) what CoreCivic would have spent on guards if a facility was staffed with the number of guards required by regulation or contract, versus (2) what it actually spent on guards as a result of reduced staffing."

- "INTERROGATORY NO. 1: For each year from 2007 until the present, state the amount that CoreCivic has paid or been ordered to pay in arbitration awards, verdicts, judgments and/or settlements resulting from the deaths of inmates. Please segregate these figures for each year according to the amounts paid for (1) assault-related deaths; (2) deaths resulting from alleged medical neglect or malpractice; and (3) deaths resulting from other causes. Please further segregate these figures according to the amounts paid for deaths at (1) Hardeman County Correctional Facility and (2) all other facilities owned or operated by CoreCivic."

- "INTERROGATORY NO. 2: For each year from 2007 until the present, state the amount that CoreCivic has paid or been ordered to pay in arbitration awards, verdicts, judgments and/or settlements resulting from inmate injuries or illnesses that did not result in death. Please segregate these figures for each year according to the amounts paid for (1) assault-related injuries; (2) alleged medical neglect or malpractice; and (3) other causes. Please further segregate these figures according to the amounts paid at (1) Hardeman County Correctional Facility and (2) all other facilities owned or operated by CoreCivic."

- "INTERROGATORY NO. 3: For each year from 2007 until the present, state the gross and net profit that CoreCivic derived (1) from Hardeman County Correctional Facility and (2) from its (i.e., CoreCivic's) overall operations."

- "INTERROGATORY NO. 9: For each year from 2007 until the present, state the cost savings that CoreCivic derived from understaffing guards at facilities that it owned or operated. Please segregate these figures for each year according to the amounts saved at (1) Hardeman County Correctional Facility and (2) all other facilities owned or operated by CoreCivic. The phrase "understaffing guards" refers to any occasion during which the number of guards at a CoreCivic facility was

below the amount required by government regulation or contract. The phrase "cost savings" refers to the difference between (1) what CoreCivic would have spent on guards if a facility was staffed with the number of guards required by regulation or contract, versus (2) what it actually spent on guards as a result of reduced staffing. If you are unable to determine a correct figure (e.g., because of inadequate record keeping), then please explain why."

## II. ANALYSIS

### A. Scope of Discovery

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obliged to demonstrate relevance. Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc., No. 2:15-CV-2258-JPM-egb, 2017 WL 5177643, at *2 (W.D. Tenn. Apr. 20, 2017). Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio

Sept. 26, 2017). Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In this case, the importance of the issues at stake in the action weighs in favor of more expansive discovery. This is a personal injury case involving death. This is also a case involving alleged violations of the Constitution. Those are important issues. Cf. Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (case involving serious personal injury was "a matter of grave import" for discovery purposes); Cratty v. City of Wyandotte, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017) ("Generally, an action to vindicate a citizen's civil rights is considered of high importance."). The amount in controversy similarly weighs in favor of expansive discovery. The parties' relative resources weigh in favor of expansive discovery production by CoreCivic and the individual defendants. CoreCivic is a large corporation and the individual defendants are each corporate executives. Johnson is a widow asserting claims as a survivor and next of kin of a deceased prison inmate. Consequently, CoreCivic and the individual defendants have substantially more resources than Johnson. As a

result, the three proportionality factors that apply across the case generally weigh in favor of expansive discovery by Johnson.

**B.     Interrogatories 1 and 2 and Requests for Production 5 and 6**

Johnson makes two arguments that this discovery is relevant. First, Johnson argues that this discovery would yield information that would demonstrate the deliberate indifference of the individual defendants. Second, Johnson argues that this discovery would support her claim for punitive damages. CoreCivic challenges the relevance of this discovery, positing it is essentially unrelated to the claims at issue in this case. CoreCivic also argues that if relevant, this discovery is disproportionate to the needs of the case. The company asserts that responding to this discovery request would require reviewing an enormous number of documents, many of which would be privileged or otherwise protected by federal law. Considering the (at best) tangential connection between the sought-after discovery and the claims, CoreCivic argues this request is disproportionate. Furthermore, CoreCivic claims there is no reason to require the company to obtain information from a period of more than twelve years, even if the court limited said discovery to a more limited universe of documents.

Documents related to past lawsuits involving understaffing and failure to provide adequate medical care are sufficiently connected to this case to satisfy the low bar for demonstrating

relevance in discovery. But Johnson has not shown why documents related to claims regarding issues other than understaffing and failure to provide adequate medical care would be relevant to this suit. Johnson has also not shown that arbitration has ever been used in prisoner claims against CoreCivic. Johnson has thus not shown that all of the discovery sought here is relevant.

Regarding disproportionality, the requests as currently worded would cover a significant amount of materials protected by the attorney-client privilege or federal law protecting the privacy of medical information. Requiring CoreCivic to respond to Johnson's discovery requests as currently worded would force the company to engage in an expensive and burdensome review and redaction process to produce documents only remotely related to this case. Furthermore, this review would have to cover documents stretching back for more than a decade, despite there being no clear reason why documents of such age would have more than *de minimus* value in this case. This is not proportional to the needs of this case.

The proposed disclosure of settlement agreements also imposes a burden on CoreCivic disproportionate to the needs of this case.[1]

---

[1] CoreCivic also argues that some of its past settlement agreements are confidential, and thus could not be disclosed by court order. This argument is unavailing because "[s]ettlement agreements are not protected from discovery simply because they are marked confidential." Lovelace v. Pediatric Anesthesiologists, P.A., No.

There is a strong public policy in favor of settlement. DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 686 (D. Kan. 2004). Broad disclosure of settlement agreements may have a chilling effect on future settlement, particularly when there is a risk that settlement agreements could be used to demonstrate future liability. As a result, whether a particular settlement agreement should be disclosed is evaluated on a case-by-case basis. Melton v. Bank of Lexington, No. 02-1152 B/P, 2007 WL 9706436, at *2 (W.D. Tenn. June 27, 2007). Johnson has not identified any specific settlement agreement that would allow for a case-by-case analysis.

However, not all of Johnson's discovery requests regarding past litigation are disproportionate to the needs of the case. Granting Johnson's request for past judgments would not require the company to engage in privilege review because judgments are a matter of public record. CoreCivic almost certainly tracks past judgments against the company. As a result, collecting such records should not be particularly burdensome for CoreCivic. Though past judgments against CoreCivic are accessible to both parties, CoreCivic would be able to access this information much more easily than Johnson. Consequently, and in light of the fact the proportionality factors weigh in favor of expansive discovery by Johnson, this portion of the motion to compel is granted in part.

---

2:13-CV-2289-JPM-dkv, 2013 WL 11776069, at *4 (W.D. Tenn. Oct. 21, 2013).

CoreCivic shall produce all civil judgments in state or federal court against the company from cases involving claims of understaffing or inadequate medical care in the company's facilities entered from January 1, 2012 to December 31, 2017. This portion of the motion to compel is otherwise denied.

C.  **Request for Production 8**

As before, Johnson makes two arguments that this discovery is relevant: that this discovery would yield information that would demonstrate the deliberate indifference of the individual defendants and that this discovery would support Johnson's claim for punitive damages. CoreCivic contests the relevance of this discovery, arguing that evidence of understaffing outside of HCCF is not relevant to the claims in this suit. CoreCivic also contests proportionality, arguing that this discovery request, as worded, would cover a vast amount of low-level communications, including records of guards at any facility calling in sick, collected over a period of more than a decade.

On the relevance issue, this discovery is relevant on the topics of understaffing or misrepresentation of staffing levels. Though CoreCivic argues that only evidence specifically related to understaffing at HCCF ought to be considered relevant, Johnson has alleged that top corporate executives at CoreCivic condoned a company-wide policy of understaffing that affected HCCF. To limit discovery as defendants propose would thus exclude a significant

quantity of relevant material from the scope of discovery. However, Johnson has not demonstrated the relevance of improper inmate segregation or classification. Though Johnson's amended complaint makes passing reference to Johnson requesting transfer to a different part of HCCF, Johnson's complaints regarding improper inmate segregation are the subject of a different lawsuit. (ECF No. 51 at 7.) Johnson has not shown that improper inmate segregation is relevant to this suit.

Turning to proportionality, Johnson's discovery request, as presently worded, would appear to capture a wide variety of low-level communications. Johnson has responded to this concern by offering to limit the request to "reports" rather than "reports, documents, and communications[.]" However, it is not clear to the court that this would meaningfully affect the universe of responsive documents. A record showing that a guard at a facility in Idaho called in sick on July 5, 2009 could be described as either a "report" or "communication." Such a record would nonetheless have *de minimus* value in resolving the questions of whether the named individual defendants were deliberately indifferent to the risks to Earl Wayne Johnson caused by understaffing, or the appropriate level of punitive damages. Plus, as before, there is no apparent reason why documents from more than a decade ago would have much bearing on the matters at issue in this case.

Some of Johnson's discovery requests are proportional to the needs of the case. Documents about understaffing that were sent or received by any of the named individual defendants could be useful in evaluating the individual defendants' alleged deliberate indifference to the risks posed to inmates by understaffing. Providing such documents would only require reviewing communications to or from three specific individuals. Given that the casewide proportionality factors counsel in favor of expansive discovery, that is not a disproportionate burden on CoreCivic. As such, this portion of the motion to compel is granted in part and denied in part. CoreCivic shall produce all reports referencing or identifying staffing shortages or misrepresentation of staffing levels at any CoreCivic facility *that were sent or received by the named individual defendants* on or between January 1, 2012 to December 31, 2017. This portion of the motion to compel is otherwise denied.

**D. Request for Production 14**

Johnson says this discovery is relevant because it is likely to lead to the identification of potential witnesses. Johnson argues that former employees of a defendant are more likely to be candid than current employees because they no longer rely on the defendant for a paycheck. CoreCivic argues this information is irrelevant and further asserts it would be expensive and burdensome to gather such documents.

On the relevance issue, Johnson has explained why the identities of former employees would be relevant. But Johnson has not explained why documents showing the reasons those employees left CoreCivic would be relevant. Johnson has thus not shown that all of the discovery sought here is relevant.

For the remaining discovery, it is unclear to the court why it would be burdensome for CoreCivic to identify which of its employees from a relatively short time frame no longer work at HCCF. CoreCivic presumably maintains employment records and can access those records with relative ease. CoreCivic claims the process of identifying former employees would be expensive, but offers no explanation why this would be the case. This does not satisfy CoreCivic's obligation to show disproportionality with specificity. See William Powell Co., 2017 WL 1326504 at *5.

The Motion to Compel is granted in part and denied in part. CoreCivic may elect between (1) producing documents that identify each CoreCivic employee at HCCF who resigned, retired, or was terminated since January 1, 2016 or (2) identifying each CoreCivic employee at HCCF who resigned, retired, or was terminated since January 1, 2016 in the form of an interrogatory response. This portion of the motion to compel is otherwise denied.

**E.     Request for Production 17 and Interrogatory 9**

Johnson argues this discovery is relevant because it would show CoreCivic knew or should have known of understaffing and

because it is relevant to the issue of punitive damages. CoreCivic states in its briefing that it has already responded to this request for production and interrogatory by asserting that the information requested does not exist because CoreCivic does not have a policy of understaffing.

Much of the dispute between the parties here appears to be the product of Johnson's choice to use the phrase "understaffing guards" as a defined term referring to "any occasion during which the number of guards at a CoreCivic facility was below the amount required by government regulation or contract." (ECF No. 38.) It is unclear whether CoreCivic intends to assert that it has never staffed its facilities below the level required by government regulation or contract, or if it simply intends to deny it understaffed guards in a more general sense. The former assertion would be surprising in light of Johnson's allegations that government reports have found understaffing at CoreCivic facilities across the country. (ECF No. 19.) The court reads CoreCivic's statements in response to Request for Production 17 and Interrogatory 9 to be objections, not substantive responses to the discovery requests.

However, the overbreadth concerns from the original version of Johnson's Request for Production 8 are present here as well. As written, Request for Production 17 would capture a large amount of low-level communications with little value to the case, making it

unreasonably expensive for CoreCivic to identify and produce responsive documents. Interrogatory 9 adds further disproportionality concerns. As Johnson concedes in her briefing, unless the company prepared documentation of cost savings from understaffing guards on its own, Interrogatory 9 would require the company to engage in an accounting analysis of more than a decade of records. (ECF No. 51 at 8.) This is excessive to the needs of the case. In the event that the company had a policy of deliberate understaffing to achieve cost savings that the individual defendants authorized or acquiesced to, as Johnson alleges, Johnson's other requests for production would produce records showing that to be the case. If such records do not exist, it is unclear what additional value would be provided by compelling the company to engage in a complex accounting analysis.

This portion of the motion to compel is granted in part and denied in part. CoreCivic shall produce all documents referencing cost savings from staffing fewer guards than required by government contract or regulation at any CoreCivic facility *that were sent or received by the named individual defendants* on or between January 1, 2012 to December 31, 2017. This portion of the motion to compel is otherwise denied.

**F. Interrogatory 3**

Johnson's only argument in favor of the relevance of this interrogatory is that it supports her claims for punitive damages.

CoreCivic argues the company's wealth is irrelevant because, it argues, the Fourteenth Amendment's Due Process Clause has been interpreted to say that a defendant's financial condition cannot be used to increase punitive damages. CoreCivic further argues that evidence of the company's financials would be likely to mislead a jury about the company's wealth.

"[E]vidence of a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff seeks punitive damages[.]" Howard v. Wilkes & McHugh, P.A., No. 06-2833, 2008 WL 4415162, at *6 (W.D. Tenn. Sept. 24, 2008). This is because a defendant's wealth is relevant, consistent with the Due Process Clause, in evaluating punitive damages. See Romanski v. Detroit Entm't, LLC, 428 F.3d 629, 647 (6th Cir. 2005). It is true that a defendant's wealth cannot be the sole factor justifying an award of punitive damages. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 427 (2003). But consideration of wealth is not "unlawful or inappropriate," as CoreCivic contends. Id. at 428 (quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 591 (1996) (Breyer, J., concurring)). CoreCivic's first argument against relevance is thus mistaken.[2]

---

[2] In so holding, the court does not adopt Johnson's argument for the relevance of this evidence: that the Supreme Court's decisions on the due process limits of punitive damages apply only to federal claims, and that Johnson is also asserting state claims in addition to her federal claims. Both contentions are incorrect. The Due Process Clause's limits on punitive damages apply to state law

CoreCivic's second argument against relevance, that information about CoreCivic's profits would be likely to mislead a jury, misstates the relevance standard in discovery. It is true that at trial, evidence may be excluded if the risk that it would mislead the jury substantially outweighs its probative value. See Fed. R. Evid. 403. But "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). There is no risk that a jury would be misled by disclosure of this or any other information in discovery. CoreCivic's second argument against relevance is thus in error.

CoreCivic has not raised disproportionality concerns, and the company's arguments against relevance are without merit. As a result, this portion of the Motion to Compel is granted.

### III. CONCLUSION

For the reasons above, the Motion to Compel is granted in part and denied in part. To the extent the motion has been granted, CoreCivic shall respond within twenty days of the entry of this order.

IT IS SO ORDERED.

                                        s/ Tu M. Pham
                                        TU M. PHAM
                                        United States Magistrate Judge

---

claims. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 563 (1996) (applying due process limitations to a state law claim involving punitive damages). Also, the district court dismissed all of Johnson's state law claims, leaving only her federal claims. (ECF No. 19.)

October 10, 2019
Date